Good morning. My name is John Klein. I represent Mr. Carona. I'm hoping I can reserve two minutes for rebuttal. Mr. Carona went to trial. He was acquitted of honest services fraud, convicted of one count of witness tampering. That count arose because in the third hour of the third meeting with a government cooperator who had been sent with instructions to get Mr. Carona to incriminate himself, he did so. Mr. Carona received a 66-month sentence on the witness tampering count. And that sentence was based in part on a guidelines calculation that produced a range of 63 to 78 months. And it's that guidelines calculation that brings us here today. The guidelines calculation for witness tampering requires a cross-reference to the underlying offense when the tampering is in connection with a criminal investigation. The underlying offense here was thought to be at the time honest services fraud. And I say thought to be at the time because the honest services fraud in this case was based on a theory which was valid at the time under the law of this circuit, Kincaid-Chompsky and other cases, but since, long since, rejected by the Supreme Court in the Skilling case. And that theory was nondisclosure of a financial interest. What happened here, the evidence at trial showed that Mr. Heidel, who was the government cooperator who met with Mr. Carona and got him to incriminate himself, that Mr. Heidel had over a period of years given Mr. Carona a series of gifts. Mr. Heidel testified that he gave Mr. Carona cash. Mr. Heidel testified that he gave Mr. Carona a boat. And Mr. Heidel testified that he gave Mr. Carona other gifts as well. Mr. Carona did not disclose those gifts on any forms that he was required to file by the state. There may have been an issue whether he was required to make that disclosure, but we're past that now. And so that was the honest services theory that the government characterized at the time as its primary theory, nondisclosure of a financial interest. What was not proven at trial and what was really never part of this case, although the government now will say that it was, was bribery. And the reason it wasn't part of the case is that for bribery, you have to have more than just a receipt of gifts, which was certainly established here by the evidence. You have to have a quid pro quo. You have to have official acts in exchange for the gifts. And that's the part of the case that has always been lacking. Now, one could conclude that the other part of the case, the nondisclosure part was even lacking based on the jury's acquittal. But again, the acquittal under Arias doesn't prevent the cross-reference. What happened when we went to sentencing? And again, this was before skilling. This is in April of 2009. So the Kincaid-Chauncey is the law. Nondisclosure of a financial interest is a valid honest services theory. When we got to the sentencing in this case, we argued that the cross-reference should not be to the bribery guideline, which is 2C1.1. And we argued that because there was no quid pro quo. The pre-sentence report said there doesn't have to be a quid pro quo. Under cases like Kincaid-Chauncey, a nondisclosure of a financial interest is enough. And therefore, there doesn't have to be a quid pro quo. But because the statutory appendix cross-referenced to 2C1.1, we're going to cross-reference there anyway. And that's exactly what happened in this case. At the original sentencing, Judge Gilford found that there was honest services fraud, which, again, under Kincaid-Chauncey was a finding that was hard to quarrel with based on a preponderance of the evidence standard at the time. He crossed-referenced to 2C1.1, which the statutory appendix said was the right thing to do. And he came up, ultimately, with a 63- to 78-month sentence. Fast forward to June of 2010. Now, by this time, we've had the sentencing. We have filed our direct appeal. We filed our opening brief. We filed our reply brief. We had oral argument. Judge Clifton was part of the panel. A month after the oral argument in this case, skilling comes down. And all of a sudden, we all learn for the first time that this nondisclosure theory, which was the heart of the government's case, its primary core fundamental theory, which was those were the prosecutor's own words, is no longer a crime at all, a federal crime. It might be a state problem, but it's not a federal crime. So now we know that this whole cross-reference shouldn't have happened. Maybe there shouldn't have been any cross-reference at all, because there wasn't any underlying federal crime here. At the time, everybody thought it was honest services fraud, and now we know that it wasn't. But if there was any cross-reference, the cross-reference should have been to 2C1.3, which deals with undisclosed conflicts of interest. That's the Hasner case from the Eleventh Circuit. It's the only one that I know of that's looked at this precise issue. And in Hasner, much as in this case, there was a public official who received undisclosed gifts, and the district court cross-referenced to 2C3.1. The Court of Appeals affirmed that cross-reference, and when the government appealed it, the government said it should have been to a different section. And that was affirmed in Hasner. So one of those two things should have happened. Either there shouldn't have been a cross-reference, because we now know in light of Skilling that there was no underlying offense. Well, we may now know, but I think the focus here needs to be on the investigation, doesn't it? Because the offense here, the conviction for witness tampering, has to do with interfering with the investigation. And at that time, wasn't the government looking into what it thought would be a case for bribery? Well, Your Honor, that raises the whole question of arias and how one interprets arias, and I confess that I'm baffled by that case. But let me put it this way. The government might have hoped that it would find evidence of bribery, but from the very beginning of this investigation, I think the first cooperator in the door back in 2004 was Mr. Jaramillo. He had been fired by Mr. Corona. They had a falling out. Somehow he ended up early on in the government's arms. And we know from Mr. Jaramillo's appeal in this case, in this court, and from his plea agreement and from his representations, that from his perspective, there was never bribery. So, again, look at Mr. Heidel's plea agreement. Well, you have, you're looking at the possibility of a public official receiving money, gifts, receiving something beyond his official salary. It doesn't seem unusual to me that investigators would be trying to figure out, well, this may not be given entirely out of the goodness of somebody's heart. What are they going to get in return for this? It may or may not turn out to be something that amounts to a quid pro quo in classic bribery terms. But it's not an unusual thing to try to look into, is it? It would not be unusual to hope to find evidence of that. But let's look at what we're precisely dealing with here. The only witness tampering that was of which Mr. Corona was convicted, there was another count he was acquitted, was August 13th of 2007. That's about that shortly before the indictment. By that point, they had Mr. Jaramillo, who had disclaimed any bribery, even as he was dumping all over Mr. Corona for other things. He was disclaiming any bribery. Mr. Heidel had pled guilty in a sealed plea agreement in, I think, January of 07. And that plea agreement, which is excerpt of Record 444, the factual basis, talks about giving cash to Corona, but it doesn't say anything about receiving anything in return. If you look at the discussion itself, now, where Mr. Heidel, in August 13th, 2007, has been instructed to get Mr. Corona to incriminate himself, there's nothing in that about gifts coming or official acts coming from Corona to Heidel. It's all about what Heidel gave Corona, and how they're going to not tell the truth about it. By that point, whatever they may have hoped to find at the beginning, by that point, they knew this was not a bribery case. This was an undisclosed conflict of interest case, which was valid at the time on a services theory. I have a minute and 23 left. Can I ask a question? I didn't understand. Are you advocating for other than plain error review here? I don't think this is plain error review, Your Honor. I think the standard of review for the district court's finding in the 2255 proceeding that bribery was involved is clear error. It's a factual finding, but it's not a plain error. Not a plain error, but you would say Judge Guilford's findings, we would have to find clear error, because he did find quid pro quo. Well, yes and no. Yes, he did. And so clear error is the standard. We say that in our brief. But interestingly, Judge Guilford, neither at the original sentencing nor in his 2255 order, says what the quid pro quo was. And that, of course, is the great mystery in this case. The government in its brief lists a series of things that it says are the quid pro quo. We go through in our reply brief at pages six to 10 and knock them down one after another. There wasn't a quid pro quo in this case. That's the thing. It just wasn't there. Mr. Heidel. You know, the government has said over and over that Mr. Heidel bought his position as assistant sheriff. Mr. Heidel didn't want to be assistant sheriff. He had to be begged to be assistant sheriff. He took the job as a volunteer. That was the only condition on which he would take it. And because he was a volunteer, he wasn't an employee. He didn't have to meet the requirements. You know, he had a he had a full police powers. He had a police cruiser. Well, he testified that he he fired up the siren on his police cruiser once in his garage because someone wanted to hear it. This was not a man who was looking for something for Mr. Corona other than perhaps friendship. If I had to parse his his his Mr. what Mr. Heidel wanted from this, this is just me. I think he was a law enforcement groupie. I think he liked being around law enforcement people. I think that's what it boiled down to. And he had a lot of money. Thank you. We will give you time for rebuttal and we'll hear from the government. Well, he's around law enforcement people quite a bit. Good morning. May it please the court. Pressing on behalf of the United States. Let me start with Judge Fisher mentioned. We're here on clear air review. And let me just start with that. That would require sensitive findings of Judge Guilford or factual determinations. The defendant would need to show that Judge Guilford's factual findings were impossible, implausible and supported by nothing in the record. That's maybe a little bit. What about that's coming from? What about counsel's point that Judge Guilford did not specify what the facts were? That is actually incorrect. Judge Guilford first at the 2009 sentencing hearing. Let me start with the government in its briefing and at the hearing listed out all of the bribery in what we determined was a stream of benefits. Bribery or retainer theory of bribery, which this court has accepted in determining to see one point one. And more particularly, which I will point out, has never once been mentioned by the defendant to see one point one B1, which is more than one bribe. Judge Guilford said he's listened to all the arguments and he accepts and adopts the arguments of the government, which included our sentencing brief, which included our arguments at oral arguments in which the defense's position at all times was it needed to be a quid pro quo. At all times, the judge said, I'm adopting those the government's arguments. I'm imposing to see one point one and more particularly to see one point one B1. Never once explained by the defendant how the district court could have possibly made a factual determination that there was more than one bribe. If this wasn't a bribery case. The district court at all times was treating this as a bribery case. And what I would say, and let me make clear because of the original sentencing or the sentencing in 2009 to now, skilling really has changed nothing. The arguments that the defendant made then and the arguments that they're making now is an interpretation of the sentencing guidelines, saying that if you look at the underlying crime, you need quid pro quo to get to 2C1.1. The same argument they made then is the same argument they're making now. And skilling didn't do anything other than, in their opinion, give them a second bite of the apple, which this court and the Supreme Court has said time and time again, habeas is not a replacement for direct appeal. And that's exactly what they're trying to do, is bring something up now that all of the factual and legal bases could have been before this court when we were here before Judge Clifton three years ago. All of these facts, all of these laws, all of the arguments that they're making about which sentencing guideline section you would look to based on the facts could have been raised then and were not. And they've never given any reason other than it would have been futile. They didn't think it was worthwhile at that time. Fast forward, all of a sudden, let's do something that we could have and should have done three years ago. And this court and the Supreme Court has said that's not appropriate. Two cases they cite for the proposition that, as long as it's raised at any time, cannot possibly stand for the proposition that it would. A, it would eviscerate decades' worth of Supreme Court precedents saying on direct appeal, Frady, Bosley, Murray. This court's precedents, I think the case from several years ago, Roswell, which I believe, Your Honor, was the district court judge on. Clearly made it specific. It needs to be raised on appeal. There'd be no reason in the world for the language being in every decision saying it's not a replacement for direct appeal if all you need to do is raise it once in the district court level. This court heard arguments and could have heard arguments. I also mentioned that the timing of skilling, they could have even raised it on direct appeal after skilling came out. They could have asked for supplemental briefing. They did not do that before this court. After the ruling in this court, when they sought certiorari before the Supreme Court, they could have asked for a grant of certiorari based on skilling, asked for immediate remand, vacate and remand, and go that route. They didn't do that either. They took their direct appeal on what they thought their best arguments were, as he said, as they said in the district court. They thought their best arguments might have been the statutory interpretation and or the contact with a representative party. That's the choice they made. They lost on those grounds. And now they're asking for a do-over, basically. And that's not permitted by this court's law nor Supreme Court precedent. The last thing that was said, and with all due respect to defense counsel's belief of who Don Heidel was and what he was doing, that's not really in the record. What is in the record is days and days and days of testimony by Don Heidel talking about the bribery scheme, not the defense counsel's spin or snippets of other people's testimony, but testimony that Judge Guilford said on the record he found credible. Don Heidel's testimony alone establishes the underlying crime of bribery. In addition to that, especially... What did Heidel get in return? What did Heidel get in return? Heidel's... This is coming from Don Heidel's testimony. Don Heidel's son, in his mind, was getting beneficial treatment. Now they'll say it didn't work out that way. But that's not what bribery is about. It's not about looking back on hindsight, did it work out? The agreement was, go to the district attorney, try and get beneficial treatment. Get your son, who is arrested while on supervised release smoking marijuana, to not go on the log books of the sheriff's department and not be arrested for that same violation of supervised release, handled by Mr. Corona and Mr. Jaramillo, another part of the bribery conspiracy. He got full police powers, which would require someone to have 600 hours of training. He didn't have that. They can say now that the whole idea was about George Jaramillo, to change the Board of Supervisors' rules to allow him to be it. Whatever they want to say now, at the time, Mike Corona is saying to Don Heidel, I will change the rules to allow you to be an assistant sheriff with full police powers. You will have powers of arrest, you will have a police cruiser, you will have all of these items that you cannot have but for me. And call him a law enforcement groupie with lots of money, but isn't what we really want our law enforcement to do is to not hand out these powers to people just because they have a lot of money? So say what you want about Don Heidel now. Exactly the same reasons of why it was a bribery case then and now doesn't change by spinning it. The evidence at trial was it was a quid pro quo. And when they talk about our primary theory or our core theory, nothing says that it's our exclusive theory. They can't say that. The evidence doesn't say that. And the law on using the cross reference says you go to the most serious provable offense by preponderance of the evidence. It's clear in this case the most serious underlying crime was bribery. What I was also going to mention, I apologize, not only was the trial testimony of quid pro quo in bribery, but the special agent, the FBI special agent who was on the stand, actually put on the stand by the defense, he was asked what was being investigated. Five separate questions and five separate answers. What was the investigation when you were doing the undercover recordings? Bribery. There was even questions about what was just brought up here. Why was most of the discussion about what Don Heidel gave to Mike Cronin, the cash, the boat, the gifts, and so forth? The response of the special agent was, well, the other direction was pretty obvious. Don Heidel, a businessman, was all of a sudden made an assistant sheriff of the Orange County Sheriff's Department, given full police powers. It's pretty obvious what went in the other direction. We wanted to get on tape that it was bought and paid for with cash, gifts, and boats. Mike Cronin didn't need to go to the meeting on August 13th. He went there willingly to try and convince his co-conspirator to not tell the government what they were up to. Unfortunately for him, all three hours he was trying to convince Don Heidel to lie about what Don Heidel had been giving him for years and what had happened. That was already litigated on direct appeal. Therefore, COLA has done that now, and now they're trying to rehash what actually happened during that meeting. Unless Your Honors have any further questions, I would say that in parting, we have no problems getting to the merits of this case because the judge on plain air review or even on any review clearly was using the facts appropriately to determine this was a bribery, quid pro quo case, and 2C1.1 would apply. I would also say we never need to get there because there's no justification for the procedural defaults and the non-cognizable claims to be raised here at a 2255. Unless Your Honors have any other questions, I'll submit. Thank you. Thank you. Mr. Klein will give you three minutes. Thank you, Your Honor. And I have three basic points. The first is Mr. Segal said something interesting there at the end of his argument. He said Mr. Corona was trying to get Mr. Heidel to lie about the gifts that Mr. Heidel had given him. Well, if you draw the inferences in the government's favor, perhaps so. But that's the point. The issue throughout this case has been the gifts coming from Heidel to Corona, not anything that Corona did in return for those gifts. And that's what would make it into a bribe as opposed to an undisclosed conflict. Judge Gilford did treat this as a bribery case. That's true. He treated it that way at the sentencing and he treated it that way in the 2255 proceeding. And when he found more than one bribe, I believe what he was thinking about was more than one payment coming from Heidel to Corona. What's missing, though, and what Judge Gilford did not specify, is what Corona allegedly did in exchange for those gifts from Heidel. And that, again, is the crux after Skilling, after June of 2010. That's the line that divides an honest services case from perhaps a state crime. The sentencing materials that counsel for the government says Judge Gilford adopted, they don't address anything coming from Corona? In the sentencing materials, and again, I would say in the 2255 materials, the government recited essentially the same litany of official acts that it did in its papers in this court. And I was going to turn to those in a second, because if you look at pages 6 through 10 of our reply brief, I don't have time to go through them all, of course, but if you look at pages 6 through 10 of our reply brief, we address them specifically, one after another, and there's simply no support for any of them. Let me just take one. This notion that Mr. Heidel gave the gifts so that he would be made assistant sheriff. Mr. Heidel himself testified in trial. Heidel talked about that. So what about the son's favorable treatment? Again, if you look at the evidence at trial, which is cited in our reply brief, pages 6 through 10, the evidence was, for example, the interference with the son's murder trial. The district attorney at the time, Mr. Rikakis, testified at trial, and he testified that he had complained to Mr. Corona about Mr. Jaramillo, not that Mr. Corona was interfering, but that Mr. Jaramillo was, and that after he complained, Mr. Jaramillo stopped, and then Mr. Jaramillo started interfering again, and Mr. Corona ultimately put a stop to it. There's no evidence in this case that Mr. Corona interfered in the prosecution of Mr. Heidel's son. In fact, Mr. Heidel's, I think, father-in-law, I may have the relationship wrong, testified at trial, but he was mad at Mr. Corona because he hadn't intervened. In fact, he thought that the son had received a harsher sentence, a harsher treatment, because Mr. Corona- That's the result. I thought Heidel testified that he thought Corona and Jaramillo gave him what he called a get-out-of-jail-free promise. He used that phrase. It had no meaning at all. Get-out-of-jail-free for whom? Heidel was never in jail. His son certainly didn't get out of jail free. In fact, his son was treated as an adult. You're talking about the results. If the promise was made in exchange for money, it's not the success of delivering on the promise. It's whether they made the promise in the first place. Well, Your Honor, I think there has to be something concrete for there to be an exchange of something for something. That is just a figure of speech that had no concrete reality at all. All right. Thank you. We thank both counsel for your very capable arguments. The case is arguably submitted. That concludes the argument calendar for today. We're adjourned.
judges: Singleton, Fisher, Clifton